COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-04-052-CV


PERRY HOMES, A JOINT                                                      APPELLANTS
VENTURE; HOME OWNERS
MULTIPLE EQUITY, INC.
D/B/A HOME/RWC OF
TEXAS; AND WARRANTY
UNDERWRITERS INSURANCE COMPANY 

V.

ROBERT E. CULL AND S. JANE CULL                                        APPELLEES

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
 
------------

OPINION

------------
        Appellees Robert and Jane Cull (“the Culls”) sued Appellants Perry
Homes, A Joint Venture (“Perry Homes”), Home Owners Multiple Equity, Inc.
d/b/a Home/RWC of Texas (“HOME”), and Warranty Underwriters Insurance
Company (“WUIC”) for the faulty construction of their home. Approximately
a year after filing suit, the Culls filed a motion to compel arbitration. Although
Appellants opposed arbitration, the trial court granted the Culls’ motion to
compel arbitration. After arbitration was completed, the Culls filed a motion to
confirm the arbitration award, and Appellants filed a motion to vacate or
alternatively to modify the arbitration award. In its final judgment, the trial
court confirmed the arbitration award. In six issues, Appellants now generally
argue that the trial court erred by compelling the parties to participate in
arbitration, confirming the resulting arbitration award, and denying Appellants’
motion to vacate or modify that award. Because we hold that (1) the Culls did
not waive arbitration, (2) the arbitrator was not evidently partial, (3) the
arbitrator did not act in manifest disregard of the law, and (4) the Culls did not
fail to meet their summary judgment burden, but (5) the trial court did err by
failing to modify its award of post-judgment interest that was awarded in
addition to the interest in the arbitration award, we affirm the trial court’s
judgment as modified.
Background Facts
        In 1996, the Culls purchased a newly constructed home from Perry
Homes for $233,730 and also purchased a home warranty from HOME and
WUIC. After years of struggling with Appellants over repairs required to fix
significant structural damage caused by foundation and drainage problems,
which lowered the appraised value of the home to $41,000, in 2000, the Culls
filed suit against Appellants. HOME and WUIC filed a motion to compel
arbitration. The Culls opposed the use of the American Arbitration Association
(“AAA”) as unconscionable, but they did not oppose arbitration. The trial court
never ruled on this motion. After about a year of discovery, the Culls filed a
combined motion to compel arbitration and plea in abatement four days before
trial. The trial court granted arbitration.
        Appellants filed a petition for writ of mandamus, arguing that the Culls
waived the right to arbitration. In April of 2002, this court denied Appellants’
petition, and in May of 2002, the Texas Supreme Court denied Appellants’
petition.
        This case then proceeded to arbitration. The parties jointly selected the
arbitrator and did not object even after receiving his disclosure that he had
litigated residential construction suits for fifteen years, was familiar with two
of the experts, and had opposed Perry Homes’s trial counsel’s firm on multiple
occasions but had not had any dealings with Perry Homes’s specific counsel. 
The Culls submitted their statement of claims in arbitration. They claimed
negligence, gross negligence, breach of contract and warranty, violations of the
DTPA, common law fraud and fraud under the business code, violations of the
insurance code, and breach of the duty of good faith. In addition to damages,
the Culls requested attorney’s fees and litigation/arbitration expenses including
court costs, arbitration costs, and expert fees.
        After the arbitrator heard the case, he awarded the Culls over $800,000
in damages, costs, and attorney’s fees. The Culls filed a motion to confirm the
arbitration award in the trial court. In response, Appellants filed a motion to
vacate or alternatively to modify the arbitration award. Following a hearing, the
trial court granted the Culls’ motion and confirmed the arbitration award in its
final judgment.
Waiver of the Right to Arbitrate
        In their first issue, Appellants argue that the Culls waived their right to
arbitrate. We disagree.
        Because public policy favors arbitration, the Federal Arbitration Act
(“FAA”) imposes a strong presumption against waiver.


 Waiver of an arbitration
right must be intentional.


 Thus, implying waiver from a party’s actions is
appropriate only if the facts demonstrate that the party seeking to enforce
arbitration intended to waive its arbitration right.


 The party seeking to prove
waiver bears a “heavy burden of proof,” and any doubts regarding waiver are
resolved in favor of arbitration.


 Courts will not find that a party has waived its
right to enforce an arbitration clause by merely taking part in litigation unless
it has substantially invoked the judicial process to its opponent’s detriment.


 
Therefore, the test for determining waiver is two-pronged: (1) did the party
seeking arbitration substantially invoke the judicial process; and (2) did the
opposing party prove that it suffered prejudice as a result?



        In this case, the parties participated in written and oral discovery,
presented motions to compel discovery, and received orders disposing of those
motions. Although Appellants allege that the Culls opposed arbitration early on,
the Culls merely opposed the use of the AAA; the Culls did not oppose
arbitration as a whole. Furthermore, HOME and WUIC did not obtain a ruling
on their early motion to compel arbitration. Additionally, the Culls did not ask
the court to make any judicial decisions on the merits of their case, for
example, by requesting summary judgment or participating in trial.


 Thus, this
case is not a case in which a party who has tried and failed to obtain a
satisfactory result in court then turns to arbitration.



        Even if we were to assume without deciding that the Culls had
substantially invoked the judicial process, the second prong of the test would
defeat Appellants’ claim of waiver. Our review of the record shows that
Appellants presented no evidence that they suffered prejudice in their response
to the Culls’ motion to compel arbitration or at the hearing on the motion. As
the trial court noted at the hearing, Appellants’ claim of prejudice was that they
have participated in litigation activities that may or may not have been required
by the arbitrator.
        Although generally referencing discovery requests and depositions taken,
Appellants did not provide any evidence of the work done, time spent, or costs
incurred that would not have been done or incurred in anticipation of an
arbitration hearing. It was not until after the arbitration had been completed
that Appellants, in their motion to vacate or, alternatively, modify the arbitration
award and their response to plaintiffs’ motion to confirm arbitration, provided
evidence of the work, time, and costs to prove they suffered prejudice. In
determining whether the Culls waived arbitration, however, we review only the
evidence that was before the trial court when it ruled on the Culls’ motion to
compel arbitration, not evidence submitted untimely.


 Because Appellants failed
to provide sufficient evidence of prejudice at the proper time, we hold that the
Culls did not waive arbitration. We overrule Appellants’ first issue.Grounds for Vacating Arbitration Award
        Arbitration awards can be vacated on limited grounds. The FAA provides
four grounds for vacating an arbitration award:
(1) where the award was procured by corruption, fraud, or undue
means;
(2) where there was evident partiality or corruption in the
arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to
postpone the hearing, upon sufficient cause shown, or in refusing
to hear evidence pertinent and material to the controversy; or of
any other misbehavior by which the rights of any party have been
prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly
executed them that a mutual, final, and definite award upon the
subject matter submitted was not made.



In addition to the four grounds the FAA provides, federal common law allows
for vacating an arbitration award when the arbitrator manifestly disregards the
law.



A. Evident Partiality
        In their third issue, Appellants argue that the trial court erred by refusing
to vacate the arbitration award because the arbitrator’s failure to disclose that
he represented homeowners in residential construction cases constituted
evident partiality. We disagree.
        The trial court must vacate an award if a neutral arbitrator exhibits
“evident partiality.”


 A neutral arbitrator selected by the parties or their
representatives exhibits evident partiality if he does not disclose facts that
might create a reasonable impression of the arbitrator’s partiality to an objective
observer.


 Courts have recognized that parties agree to arbitrate because they
prefer a panel with expertise regarding the subject matter of dispute, and this
expertise often comes from experience in the field, which may have involved
personal dealings with the parties.


 Information regarding a relationship with
a party—such as representation or familial or close social ties—should be
disclosed, but a neutral arbitrator need not disclose relationships or connections
that are trivial.



        In this case, the arbitrator disclosed that he knew a lot of the attorneys
in Perry Homes’s trial counsel’s firm, that he had represented clients in which
Perry Homes’s trial counsel’s firm represented the opposing party, and that he
did not know the attorney in this case. He disclosed that he had litigated
residential construction cases for about fifteen years, so “a number of the
witnesses [were] familiar to [him] or [he had] heard of them.” He further
disclosed that one of the witnesses “did a report on [his] client’s property” and
that another witness “did a foundation analysis on [his] client’s home and was
being paid by the builder.”
        Despite the arbitrator’s statements that he had fifteen years’ experience
in the residential construction field, implying that he had represented residential
homeowners in these cases, and that Appellant Perry Homes’s trial counsel’s
firm had actually litigated against him in previous cases, Appellants allege that
because they discovered after arbitration that the arbitrator had represented
homeowners in five cases, the arbitrator was evidently partial. We disagree and
hold that the arbitrator properly disclosed information that might indicate bias
before the arbitration began. Appellants did not object.
        Additionally, although Appellants allege that the arbitrator represented
homeowners in five residential construction cases, they did not produce any
withheld evidence (1) of the total number of cases that the arbitrator handled
during his practice of at least fifteen years or the percentage of cases that he
handled on behalf of homeowners versus builders, (2) that he knew any of the
parties in this case, or (3) that he had an association with anyone or a
membership anywhere that would create a reasonable impression of the
arbitrator’s partiality to an objective observer.


 Thus, we hold that the
undisclosed information complained about was trivial. We overrule Appellants’
third issue.
 
 
B. Manifest Disregard of the Law
        In their fifth issue, Appellants argue that the arbitrator acted in manifest
disregard of the law by awarding the Culls expert witness fees and disregarded
the argument that the Culls had waived arbitration. We disagree.
        An arbitrator’s interpretation of the law is not subject to review for error
unless the arbitrator manifestly disregarded the law in his decision.


 “Manifest
disregard of the law” is a judicially-created ground for vacating arbitration
awards.


 Manifest disregard of the law is more than mere error or
misunderstanding with respect to the law.


 Under this standard, the arbitrator
clearly recognizes the applicable law, but chooses to ignore it.


 “To adopt a
less strict standard of judicial review would be to undermine our well-established deference to arbitration as a favored method of settling disputes
when agreed to by the parties.”


 Therefore, the court’s “review for manifest
disregard of the law does not open the door to extensive judicial review.”



Accordingly, judicial review under this standard is “extremely limited.”


 The
party seeking to vacate an arbitration award bears the burden of demonstrating
the arbitration panel acted in manifest disregard of the law.



        In this case, Appellants rely only on the general rule that although the
prevailing party will recover all court costs, costs of experts are incidental
expenses in preparation for trial and not recoverable.


 This rule, however, does
not apply where a statute or contract provides for recovery of witness fees.


 
While the contracts between the Culls and Appellants do not discuss expert
witness fees, Texas law permits recovery of expert witness fees for statutory
fraud in real estate claims.


 Furthermore, the AAA rules authorize the
arbitrator to “grant any remedy or relief that the arbitrator deems just and
equitable.”


 Thus, the arbitrator did not act with manifest disregard of the law
when he awarded expert fees.
        Additionally, because we have already held that the Culls did not waive
their right to arbitrate the claims in this case, the arbitrator did not act with
manifest disregard of the law by ruling that the Culls did not waive arbitration. 
Consequently, we overrule Appellants’ fifth issue.Burden of Proof
        In their fourth issue, Appellants alternatively argue that the Culls failed to
meet their summary judgment burden to negate Appellants’ defense of evident
partiality. We disagree. 
        A defendant is entitled to summary judgment on an affirmative defense
if the defendant conclusively proves all the elements of the affirmative
defense.


 To accomplish this, the defendant-movant must present summary
judgment evidence that establishes each element of the affirmative defense as
a matter of law.


 In this case, it was Appellants’ burden to prove their
defense, and, although the Culls could have filed a reply to Appellants’ response
to their motion to confirm the arbitration award, the Culls were not required to
put on evidence to negate Appellants’ defense. As set forth above, Appellants
did not conclusively prove that the arbitrator was evidentially partial. We
overrule Appellants’ fourth issue.
Modification of the Trial Court’s Judgment
        In their sixth issue, Appellants argue that the trial court erred by refusing
to modify its judgment to correct errors in the arbitration award that resulted
in contradictory deadlines for complying with the injunctive relief, an award of
interest above what the arbitrator awarded, an award of post-confirmation
attorney’s fees, and an award of costs taxed on parties that the Culls had
previously nonsuited.
        First, Appellants argue that the award of post-arbitration attorney’s fees
exceeded the arbitrator’s authority. We disagree. Although a trial court may
not add post-arbitration attorney’s fees to the arbitration award that includes
such fees in its final judgment, the arbitrator may award such fees in the
arbitration award.


 Additionally, attorney’s fees are allowed in cases such as
this one involving DTPA and fraud in real estate claims.


 Thus, the trial court
did not err by confirming the arbitrator’s award of post-arbitration attorney’s
fees in its final judgment.
        Second, Appellants argue that the trial court’s judgment should be
modified because it awards costs on parties that the Culls previously nonsuited. 
We disagree. Because Jerald W. Kunkel, P.E., and Jerald W. Kunkel, P.E., Inc.,
d/b/a Jerald W. Kunkel Consulting Engineers, Inc. had been nonsuited before
the final judgment, the trial court’s reference to “defendants” in its final
judgment refers to the remaining defendants in this case regardless of the fact
that the nonsuited defendants remained in the style of the case. Appellants
were the only remaining defendants at the time of the trial court’s judgment,
and thus, the trial court’s judgment makes them and only them responsible for
the fees.
        Third, Appellants allege that the judgment is inconsistent in two respects. 
The judgment provides that the closing shall take place within sixty days after
the date of the judgment, but it also provides that the actions are to be taken
and sums paid on or before thirty days from the date of the judgment. 
Although Appellants have not clearly specified the modification in the dates of
the judgment requested, the Culls agree to a modification of the judgment to
state that the closing shall take place within sixty days after the date of the
final judgment and that all other sums not related to paragraph (a) shall be due
thirty days after the date of the final judgment. Because this modification
appears to represent Appellants’ requested modification and will resolve any
alleged inconsistency in the judgment, we modify the judgment to reflect those
changes.



        Finally, Appellants argue that the trial court erred by awarding interest in
addition to what the arbitrator awarded. Because the trial court’s judgment
regarding this additional interest is ambiguous, we agree with Appellants. The
trial court’s judgment states that “the judgment here rendered shall bear post-judgment interest at the rate of 10% per annum from the date of signing until
paid.” This interest could be interpreted to add 10% interest on the interest
awarded by the arbitrator, which was “ten percent (10%) per annum from thirty
(30) days after the date of this Award until paid.” We find no statutory or case
law in support of this modification.


 Thus, the trial court should not have
included this additional interest in its judgment. We therefore further modify
the trial court’s judgment to delete “that the Judgment here rendered shall bear
post-judgment interest at the rate of 10% per annum from the date of signing
until paid” and overrule the remaining arguments Appellants raised in their sixth
issue.
Findings of Fact
        Alternatively, Appellants argue in their second issue that the trial court
erred by failing to enter findings of fact and request that this case be abated to
the trial court for entry of findings of fact. According to Rules 296 and 297 of
the Texas Rules of Civil Procedure, a trial judge must prepare findings of fact
in cases tried in the district court or county court without a jury, that is, where
there has been an evidentiary hearing to the court or a bench trial on the
merits.


 When a trial court grants summary judgment relief, however, findings
of fact have no place in the proceeding because the summary judgment
proceeding has not been “tried” within the scope of Rule 296.


 Although
Appellants argue in this issue that the motion to vacate hearing was an
evidentiary hearing requiring findings of fact, they contradictorily argue in their
fourth issue that their motion to vacate the arbitration award was their response
to the Culls’ motion to confirm the arbitration award, which was a summary
judgment proceeding. Our review of the record shows that this hearing was
not a bench trial on the merits of the case. The hearing was held in the form
of a summary judgment hearing; only arguments were given, no live testimony
was given, and the only evidence presented was not offered or admitted at the
hearing but was attached to the parties’ motions. Thus, because findings of
fact have no place in summary judgment proceedings,


 we overrule Appellants’
second issue.
Conclusion
        Having held that the trial court erred by awarding post-judgment interest
in addition to the interest awarded by the arbitrator, we modify the trial court’s
judgment by removing the following, “[T]hat the Judgment here rendered shall
bear post-judgment interest at the rate of 10% per annum from the date of
signing until paid.”
        Having held that the trial court’s judgment is ambiguous regarding the
time periods by which Appellants must comply with the judgment, we modify
the paragraph following paragraph g. of the trial court’s judgment to state, “The
action are to be taken and sums are to be paid as set forth in paragraphs b., c.,
d., e., f., and g., herein, on or before thirty (30) days from the date of this Final
Judgment.”
        We affirm the trial court’s judgment as modified.
 
 
                                                                  LEE ANN DAUPHINOT
                                                                  JUSTICE
PANEL B:   DAUPHINOT, HOLMAN, and WALKER, JJ.
DELIVERED: August 31, 2005